**RECEIVED**
07/06/2026
KELLY L. STEPHENS, Clerk

UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

JEREMY SPENCER,

Plaintiff-Appellant,

v.

WILLIAM L. ARCHER, JR.; JEFFREY R. GRIFFITH; SHELLEY

REYNOLDS; SABRINA CLINE; JOHN CLARK, JR.; et.al,

Defeandants-Appellees.

**Appeal Case No. 26-3462**

**District Court Case No. 2:25-cv-00785-SDM-KAJ**

**On Appeal from the United States District Court**

**for the Southern District of Ohio, Eastern Division**

BRIEF OF PLAINTIFF-APPELLANT

JEREMY SPENCER

PROCEEDING IN PROPRIA PERSONA

Plaintiff-Appellant, in propria persona

c/o [1891 Grovepointe Dr.]

Florence Ky 41042

330-396-3566

Spencerj2121@yahoo.com

i

## CORPERATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Sixth Circuit Rule 26.1, Plaintiff-Appellant Jeremy Spencer states that he is a natural man proceeding in propria persona. To the best of his knowledge, he has no parent corporation overloads that are related to this case in anyway. To the best of his knowledge, No publicly owned corporation or its affiliate has a financial interest in the outcome of this appeal.

## OTHER DISCLAIMER

Plaintiff has made reasonable efforts to provide record citations. However, Plaintiff proceeds in propria persona and in extreme indigency, and does not have free electronic filing or unrestricted PACER access. To identify every Court-assigned PAGEID number for every specific document would require Plaintiff to purchase PACER pages that he cannot afford. Plaintiff therefore cites PAGEID numbers where known and otherwise cites the docket document, filing title, and page number available from Plaintiff's own records. Holding Plaintiff's inability to purchase PACER access against him would prejudice an indigent litigant based solely on poverty. As the Supreme Court held in Griffin v. Illinois, 351 U.S. 12, 19 (1956), "There can be no equal justice where the kind of trial a man gets depends on the amount of money he has." Destitute litigants must be afforded meaningful review that is not made dependent on their ability to buy transcripts or records. Id.

ii

## **TABLE OF CONTENTS**

I. JURISDICTIONAL STATEMENT  …………………………………1

II. STATEMENT OF ISSUES PRESENTED…………………………2

III. STATEMENT OF THE CASE      …………………………………5

IV. PROCEDURAL HISTORY  ……………………………………….10

V. SUMMARY OF THE ARGUMENT…………………………………15

VI. STANDARD OF REVIEW  ………………………………………..19

VII. ARGUMENT ………………………………………………………..21

Issue 1: Jurisdictional Prerequisites…………………………………21

Issue 2: Screening-Stage Inferences    ………………………………..25

Issue 3: Section 1983 Immunity Text………………………………….27

Issue 4: Judicial Immunity…………………………………………..31

Issue 5: Prosecutorial Immunity……………………………………….34

Issue 6: Quasi-Judicial Immunity……………………………………….36

Issue 7: Missing Records and Access to Courts………………………..38

Issue 8: De Novo Review of Objections………………………………42

Issue 9: Leave to Amend………………………………………………44

Issue 10: Rule 59(e)……………………………………………………47

Issue 11: Cumulative Effect…………………………………………..50

VIII. CONCLUSION……………………………………………………51

IX. RELIEF REQUESTED………………………………………………51

## TABLE OF AUTHORITIES

### CASES

Ashcroft v. Iqbal, 556 U.S. 662 (2009)...............................................................19, 26

Banister v. Davis, 590 U.S. ___, 140 S.Ct. 1698 (2020) ...................................21, 47

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)........................................19, 26

Bounds v. Smith, 430 U.S. 817 (1977) ......................................................................41

Buckley v. Fitzsimmons, 509 U.S. 259 (1993)...........................................................34

Burns v. Reed, 500 U.S. 478 (1991) ..........................................................................34

Christopher v. Harbury, 536 U.S. 403 (2002)...........................................................41

Draper v. Washington, 372 U.S. 487 (1963)..............................................................41

Erickson v. Pardus, 551 U.S. 89 (2007).....................................................................19

Estelle v. Gamble, 429 U.S. 97 (1976) .......................................................................19

Foman v. Davis, 371 U.S. 178 (1962)....................................................................20, 45

Forrester v. White, 484 U.S. 219 (1988).....................................................................31

GenCorp, Inc. v. American Int'l Underwriters, 178 F.3d 804 (6th Cir. 1999).........48

Gerstein v. Pugh, 420 U.S. 103 (1975) ..................................................................23, 39

Griffin v. Illinois, 351 U.S. 12 (1956)........................................................................41

Haines v. Kerner, 404 U.S. 519 (1972).......................................................................19

Hill v. Lappin, 630 F.3d 468 (6th Cir. 2010)..........................................................19, 25

Imbler v. Pachtman, 424 U.S. 409 (1976) ..................................................................34

Jameson v. Desta, 5 Cal.5th 594 (2018) ...................................................41

LaFountain v. Harry, 716 F.3d 944 (6th Cir. 2013)...................................45

M.L.B. v. S.L.J., 519 U.S. 102 (1996) ......................................................41

Mayer v. City of Chicago, 404 U.S. 189 (1971).......................................41

Miller v. Calhoun County, 408 F.3d 803 (6th Cir. 2005)..........................42

Mireles v. Waco, 502 U.S. 9 (1991).....................................................31, 33

Pratts v. Hurley, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992 .................22

Rose v. Hartford Underwriters Ins. Co., 203 F.3d 417 (6th Cir. 2000) .............20, 45

State v. Mbodji, 129 Ohio St.3d 325, 2011-Ohio-2880, 951 N.E.2d 1025 .............22

Stump v. Sparkman, 435 U.S. 349 (1978) .................................................31

Thomas v. Arn, 474 U.S. 140 (1985) ........................................................42

United States v. Walters, 638 F.2d 947 (6th Cir. 1981)............................42

## STATUTES

28 U.S.C. § 1291 ..........................................................................................2

28 U.S.C. § 1331 ..........................................................................................1

28 U.S.C. § 1343 ..........................................................................................1

28 U.S.C. § 1915(e)(2)(B)(ii) ......................................12, 19, 25, 27, 43

28 U.S.C. § 636(b)(1)...................................................................4, 20, 42

42 U.S.C. § 1983.............................................. 1–2, 5, 28–30, 43–44, 50

42 U.S.C. § 1985...................................................................................1, 5

42 U.S.C. § 1986 ..................................................................................................1, 5

Ohio Rev. Code § 2935.09 ......................................................................................22

Ohio Rev. Code § 2935.10 ......................................................................................22

**RULES**

Federal Rule of Appellate Procedure 4(a)(4) ...........................................................49

Federal Rule of Civil Procedure 8 ...........................................11–12, 17, 45, 47, 50

Federal Rule of Civil Procedure 12(b)(6) ..................... 12, 19–20, 25–27, 43, 45, 47

Federal Rule of Civil Procedure 15(a)(2) ................................................................45

Federal Rule of Civil Procedure 59(e)... 1, 4–5, 9, 14–16, 18–19, 21, 24, 26–27, 30, 46–52

Federal Rule of Civil Procedure 72(b)(3) ....................................................4, 20, 42

Ohio Criminal Rule 3 ..............................................................................................22

Ohio Criminal Rule 4 ..............................................................................................22

Ohio Criminal Rule 11 ......................................................................................13, 41

Ohio Criminal Rule 22 ......................................................................................39–40

**OTHER AUTHORITIES**

Alexander A. Reinert, Qualified Immunity's Flawed Foundation, 111 California Law Review 201 (2023).........................................................................................29

## **STATEMENT REGARDING ORAL ARGUMENT**

Plaintiff-Appellant respectfully requests oral argument if the Court determines that argument would assist the decisional process.

This appeal presents issues concerning screening-stage dismissal, judicial and quasi-judicial immunity, prosecutorial immunity, Rule 59(e), denial of amendment as futile, pro se pleading construction, and the distinction between general subject-matter jurisdiction and lawful invocation of jurisdiction in a particular proceeding. Plaintiff-Appellant believes oral argument may assist the Court because the appeal concerns several overlapping procedural and immunity issues arising at the screening stage, before service of process, discovery, or adversarial factual development. Oral argument may help clarify the specific legal errors Plaintiff-Appellant alleges occurred below and the limited relief requested on appeal. However, Plaintiff-Appellant also recognizes that oral argument is within the Court's discretion and respectfully submits the matter on the briefs if the Court determines that oral argument is unnecessary.

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**
**100 EAST FIFTH STREET, ROOM 540**
**POTTER STEWART U.S. COURTHOUSE**
**CINCINNATI, OHIO 45202-398**

| | |
|---|---|
| **Jeremy Spencer** ) | |
| **C/O [**1891 Grovepointe dr. ) | |
| Florence Ky 41042**]** ) | **District Case No: 2:25-cv-00785-SDM-KAJ** |
| **Appellant/Plaintiff** ) | |
| ) | **Appeal Case No: 26-3462** |
| vs. ) | |
| ) | |
| **Archer et.al.** ) | |
| **Défendant/appelle** ) | |

## I. JURISDICTIONAL STATEMENT

1. The United States District Court for the Southern District of Ohio possessed subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because Plaintiff asserted claims arising under the Constitution and laws of the United States, including 42 U.S.C. §§ 1983, 1985, and 1986.

2. On April 7, 2026, the District Court entered an Opinion and Order adopting the Report and Recommendation, dismissing Plaintiff's federal claims with prejudice, declining supplemental jurisdiction over state-law claims, and denying Plaintiff's request for further amendment. Final judgment was entered the same day.

3. Plaintiff thereafter timely filed a Motion to Alter or Amend Judgment pursuant to Federal Rule of Civil Procedure 59(e). On June 11, 2026, the District Court denied that motion.

**4.** Plaintiff timely sought appellate review of the final judgment and all merged interlocutory orders. This Court possesses appellate jurisdiction pursuant to 28 U.S.C. § 1291 because this appeal arises from a final judgment disposing of all claims as to all parties.

## II. STATEMENT OF ISSUES PRESENTED

5. Issue 1: Jurisdictional Prerequisites

Whether the District Court erred when it treated the Vinton County Court's general subject-matter jurisdiction as sufficient to establish that jurisdiction was lawfully invoked in Plaintiff's particular proceeding, despite allegations that the constitutional and statutory prerequisites necessary to invoke lawful authority were absent, disputed, undocumented, or incapable of verification.

**6. Issue 2: Screening-Stage Inferences**

Whether the District Court erred when it resolved disputed factual and legal inferences against Plaintiff at the screening stage instead of accepting Plaintiff's well-pleaded allegations as true and drawing reasonable inferences in Plaintiff's favor.

**7. Issue 3: Section 1983 Immunity Text**

Whether the District Court erred when it applied judicially created immunity doctrines without meaningfully addressing Plaintiff's preserved argument that 42 U.S.C. § 1983, including its mandatory "shall be liable" language and

original Notwithstanding Clause, contains no textual immunity exception and should not be expanded beyond binding precedent's narrowest limits.

**8. Issue 4: Judicial Immunity**

Whether the District Court erred when it concluded that Defendant Griffith was entitled to judicial immunity despite allegations that the challenged conduct was nonjudicial, administrative, ministerial, off-record, coercive, or undertaken before lawful authority had been invoked.

**9. Issue 5: Prosecutorial Immunity**

Whether the District Court erred when it concluded that Defendant Archer was entitled to prosecutorial immunity despite allegations that the challenged conduct included coercive property leverage, continued retention of non-evidentiary property, plea-related pressure, and conduct outside traditional advocacy functions.

**10. Issue 6: Quasi-Judicial Immunity**

Whether the District Court erred when it concluded that Defendant Reynolds was entitled to quasi-judicial immunity despite allegations involving ministerial docketing failures, missing or withheld records, access-to-courts injury, and conduct not requiring judicial discretion.

**11. Issue 7: Missing Records and Access to Courts**

Whether the District Court erred when it failed to meaningfully address Plaintiff's allegations that missing, unavailable, or unproduced records concerning commencement of proceedings, probable-cause review, arraignment, plea proceedings, and jurisdictional attachment prevented meaningful review and injured Plaintiff's access to courts.

**12. Issue 8: De Novo Review of Objections**

Whether the District Court failed to provide the individualized de novo review required by 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(3) after Plaintiff raised specific objections concerning jurisdiction, immunity, missing records, access to courts, pleading standards, amendment, and characterization of the allegations.

**13. Issue 9: Leave to Amend**

Whether the District Court abused its discretion and legally erred when it denied further amendment as futile without meaningfully analyzing whether Plaintiff's proposed amendments cured the deficiencies identified during screening.

**14. Issue 10: Rule 59(e)**

Whether the District Court erred when it denied Plaintiff's Rule 59(e) motion on the ground that it largely repeated prior objections without addressing

whether those repeated objections identified material legal or factual errors in the dismissal order.

**15. Issue 11: Cumulative Effect**

Whether the cumulative effect of the District Court's screening-stage errors requires reversal, vacatur of the judgment, and remand for further proceedings.

## III. STATEMENT OF THE CASE

16. Plaintiff-Appellant Jeremy Spencer brought this civil-rights action without assistance of counsel under 42 U.S.C. §§ 1983, 1985, and 1986. The action arose from criminal proceedings in the Vinton County Court and from related conduct by judicial, prosecutorial, clerical, and attorney participants. The District Court later described this case as Plaintiff's third federal case arising from his arrest, investigation, detention, and state criminal proceedings, and stated that this case focused on the Vinton County Court criminal matter. (Doc. 29, PAGEID ## 600–602.)

17. This appeal does not ask the Court of Appeals to decide the ultimate truth of the underlying facts. It asks whether the District Court applied the correct legal standards at the screening stage, accepted Plaintiff's well-pleaded allegations as true, drew reasonable inferences in Plaintiff's favor, properly conducted de novo review of specific objections, properly applied immunity doctrines, properly denied amendment as futile, and properly denied Rule 59(e) relief.

18. Plaintiff's claims were not merely based on disagreement with adverse rulings in a state criminal case. Plaintiff alleged that the underlying proceedings lacked, failed to document, or failed to verify foundational constitutional and statutory safeguards necessary to establish lawful authority in his particular case. Those alleged deficiencies included the absence or unverifiability of lawful commencement of proceedings, valid service or presentation of charges, probable-cause review, arraignment, creation of an official record, plea colloquy, and procedures necessary to confirm that jurisdiction was lawfully invoked.

19. The Report and Recommendation summarized several of Plaintiff's allegations. It recognized that Plaintiff alleged he appeared before Defendant Jeffrey R. Griffith on May 2, 2024 while being held in the Southeastern Regional Jail, that Plaintiff alleged he was not told who was charging him or served with a complaint, and that Plaintiff alleged Defendant Griffith imposed a $50,000 bond. (Doc. 13, PAGEID # 378.)

20. The Report and Recommendation also recognized that Plaintiff alleged Defendant Clark later informed him he had not yet been arraigned; that Plaintiff raised concerns regarding seized religious property; that Defendant Archer dismissed the weapons-under-disability charge during the May 30, 2024 hearing; that Defendant Clark made an oral motion for return of religious

property; and that Plaintiff alleged he was not read the charges or asked to enter a plea during that hearing. (Doc. 13, PAGEID ## 378–379.)

21. The Report and Recommendation further recognized that Plaintiff alleged he disputed service of a complaint, that a July 11, 2024 hearing occurred by phone rather than video, that Plaintiff alleged he could not hear Judge Griffith or Archer, that Plaintiff alleged there was no plea colloquy, and that Plaintiff returned plea paperwork marked "without prejudice" and "under duress." (Doc. 13, PAGEID # 380.)

22. Plaintiff also alleged that, on August 8, 2024, he had no interaction with Judge Griffith or Archer, remained outside the courtroom, and was handed finalized plea paperwork by Defendant Clark. The Report and Recommendation recognized Plaintiff's allegation that he felt pressured to accept the plea to obtain release of the ankle monitor and return of property. (Doc. 13, PAGEID # 381.)

23. Plaintiff further alleged that records necessary to verify the proceedings were missing, unavailable, incomplete, withheld, or incapable of production. The Report and Recommendation recognized that Plaintiff alleged he submitted records requests and later filed documents in the Vinton County Court, including plea-withdrawal filings, delayed appeal materials, fraud notice,

recusal motion, and renewed records requests, but did not receive a response. (Doc. 13, PAGEID # 382.)

24. The central issue is not whether the Vinton County Court generally possesses jurisdiction over misdemeanor or traffic matters. Plaintiff does not dispute general subject-matter jurisdiction in the abstract. The central issue is whether the District Court erred by treating general jurisdiction as sufficient while failing to meaningfully address Plaintiff's separate allegation that jurisdiction was not lawfully invoked in Plaintiff's particular proceeding.

25. The District Court's April 7, 2026 Opinion and Order stated that Judge Griffith was entitled to judicial immunity because the challenged conduct was judicial in nature and because Plaintiff's allegations addressed conduct in adjudicating county-court proceedings. (Doc. 24, PAGEID # 552.) Plaintiff contends that this analysis assumed the very point Plaintiff disputed: that a validly invoked proceeding existed and that the challenged conduct occurred within lawful judicial authority.

26. The District Court likewise held that Defendant Archer was entitled to prosecutorial immunity, reasoning that the challenged conduct concerned prosecution, plea negotiations, and advocacy functions. (Doc. 24, PAGEID # 553.) Plaintiff contends that the District Court characterized the allegations at too high a level of generality and failed to analyze whether the alleged conduct

included administrative, coercive, or non-advocative conduct outside protected prosecutorial functions.

27. The District Court further held that Defendant Reynolds was entitled to quasi-judicial immunity and that the allegations against her did not state a federal constitutional violation. (Doc. 24, PAGEID # 554.) Plaintiff contends that the District Court failed to meaningfully address allegations concerning ministerial docketing failures, missing or withheld records, and access-to-courts injury.

28. Accordingly, this appeal challenges the District Court's legal conclusions at the screening stage. Plaintiff submits that the District Court erred by resolving disputed inferences against him, assuming lawful authority, applying immunity doctrines on that assumption, failing to meaningfully address specific objections, denying leave to amend as futile without sufficient analysis, and denying Rule 59(e) relief without correcting those errors.

29. If the District Court's dismissal is allowed to stand, immunity will have been used at the screening stage to end the case before service, discovery, fact-finding, or any meaningful opportunity to prove the allegations. That result would deprive Plaintiff of meaningful due process. It would also permit persons acting as officers, persons acting as a judge, persons acting as prosecutors, and persons acting through the Clerk's office—whether sued in their individual capacities, official capacities, or both—to avoid accountability for allegedly

taking and withholding property without a valid warrant, without probable cause, without due process, and without a lawful forfeiture proceeding, then using that property as leverage to pressure plea-related action.

30. Plaintiff further alleges that the Clerk's office and the Vinton County Court compounded those injuries by failing to follow basic criminal-procedure and docketing duties: ignoring, withholding, failing to verify and/or docket , or failing to rule on Plaintiff's pro se filings challenging jurisdiction, seeking post-conviction relief, seeking to vacate or set aside judgment, seeking withdrawal of plea-related documents, seeking delayed appeal, seeking expungement or sealing relief, seeking recusal, demanding findings of fact and conclusions of law, requesting records, and demanding hearings. The Clerk and Court cannot ignore filings requiring judicial action, fail to create appealable rulings, and then rely on missing records or lack of rulings to defeat review. Plaintiff alleges that this conduct obstructed access to courts, prevented meaningful review, and allowed property, liberty, and due-process injuries to continue without factual development, legal review, or a meaningful record.

## IV. PROCEDURAL HISTORY

31. Plaintiff initiated this action on July 14, 2025. On July 25, 2025, the Magistrate Judge granted Plaintiff leave to proceed in forma pauperis, denied appointment of counsel without prejudice, denied ECF access and consolidation without

prejudice, and addressed the sufficiency of Plaintiff's original complaint. (Doc. 10, PAGEID ## 96–99.)

32. The July 25, 2025 Order stated that Plaintiff's original complaint did not comply with Federal Rule of Civil Procedure 8(a), was over thirty pages long, included allegations against four defendants, concerned proceedings in the Vinton County, Ohio courts, and contained pages of legal argument. (Doc. 10, PAGEID # 98.)

33. Rather than dismiss the case at that time, the Magistrate Judge allowed Plaintiff an opportunity to file an amended complaint conforming with Rule 8(a). The Order required Plaintiff to file an amended complaint not exceeding twenty pages and directed that it set forth, in clear, short, and concise terms, the names of each defendant, the specific claims for relief attributable to each defendant, and the factual allegations supporting each claim. (Doc. 10, PAGEID # 98.)

34. Plaintiff thereafter filed the pleading labeled "Amended Complaint." The Report and Recommendation later stated that the Amended Complaint superseded the prior complaint and was the operative complaint in the case. (Doc. 13, PAGEID ## 374–375.) Plaintiff maintains that, although the filing was labeled an amended complaint, it functioned in practical effect as the first operative pleading meaningfully screened on the merits because the original

complaint had been found noncompliant with Rule 8 and the Court had stated that no operative complaint yet existed. (Doc. 10, PAGEID ## 97–98.)

35. On February 6, 2026, the Magistrate Judge issued an Order and Report and Recommendation screening the Amended Complaint under 28 U.S.C. § 1915(e)(2). (Doc. 13, PAGEID ## 374–376.) The Report and Recommendation stated that the Amended Complaint was subject to dismissal in its entirety. (Doc. 13, PAGEID # 382.)

36. The Report and Recommendation also advised the parties that failure to object would waive de novo review by the District Judge and waive the right to appeal, and further advised that even when timely objections are filed, appellate review of issues not raised in those objections is waived. (Doc. 13, PAGEID # 393.)

37. Plaintiff filed objections to the Report and Recommendation. In those objections, Plaintiff asserted that the Report and Recommendation misapplied immunity doctrines, resolved disputed factual matters against Plaintiff at the screening stage, and failed to properly apply the Rule 12(b)(6) plausibility standard incorporated into 28 U.S.C. § 1915(e)(2). (Plaintiff's Objections to R&R, p. 2.)

38. Plaintiff also objected that the Amended Complaint was filed pursuant to the Court's directive to shorten the original pleading, that Plaintiff necessarily

condensed legal exposition in complying with that directive, and that any perceived compression reflected compliance with the Court's instruction rather than absence of factual content. (Plaintiff's Objections to R&R, pp. 4–5.)

39. Plaintiff specifically objected to the Report and Recommendation's judicial-immunity analysis, arguing that immunity could not be applied by resolving contested jurisdictional or procedural facts against the pleader, and that the challenged conduct included failure to ensure service, absence of recorded arraignment, absence of a Crim.R. 11 plea colloquy, hallway plea paperwork, irregular plea documentation, and property leverage. (Plaintiff's Objections to R&R, pp. 8–10.)

40. Plaintiff also filed immunity memoranda. The District Court's April 7, 2026 Opinion and Order expressly stated that Plaintiff filed a memorandum opposing absolute judicial immunity as applied and a memorandum opposing Defendant Griffith's assertion of absolute judicial immunity, and the District Court construed those two later filings as part of Plaintiff's objections. (Doc. 24, PAGEID ## 550–551.)

41. While the objections remained pending, Plaintiff moved for leave to further amend and also moved for leave to exceed page limitations. The District Court later acknowledged that Plaintiff filed those motions after lodging objections and before the Court ruled on them. (Doc. 24, PAGEID # 551.)

42. On April 7, 2026, the District Court issued an Opinion and Order. The District Court overruled Plaintiff's objections except as to clarification that the Vinton County Court was not a municipal court, adopted and affirmed the Report and Recommendation except for that clarification and the withdrawn RFRA and Article III claims, dismissed the RFRA and Article III claims without prejudice, dismissed all other federal claims with prejudice, dismissed the state-law claims without prejudice, and directed the Clerk to terminate the case. (Doc. 24, PAGEID ## 560–561.)

43. On the same day, April 7, 2026, final judgment was entered. The judgment stated that the action was resolved pursuant to the Order by Chief Judge Sarah D. Morrison. (Doc. 25, PAGEID # 562.)

44. Plaintiff thereafter filed a Motion to Alter or Amend Judgment under Federal Rule of Civil Procedure 59(e). In that motion, Plaintiff argued that reconsideration was warranted because the District Court mischaracterized Plaintiff's allegations as procedural defects within jurisdiction rather than absence of jurisdictional prerequisites, applied immunity despite the absence of a lawfully invoked proceeding, failed to properly construe pro se pleadings, denied amendment based on an incorrect understanding of procedural posture, and relied on a record and framework that did not account for the absence of required constitutional procedures. (Plaintiff's Rule 59(e) Motion, pp. 3–4.)

45. On June 11, 2026, the District Court denied Plaintiff's Rule 59(e) motion. The District Court stated that Plaintiff sought to vacate the April 7, 2026 Order adopting the Report and Recommendation, dismissing the case, and denying leave to amend, or alternatively sought further leave to amend. (Doc. 29, PAGEID # 600.)

46. In the June 11, 2026 Opinion and Order, the District Court recognized that Plaintiff's first three Rule 59(e) challenges argued that the Court mischaracterized his allegations as procedural defects within jurisdiction rather than absence of jurisdictional prerequisites, applied immunity despite the absence of a lawfully invoked proceeding, and relied on a record and framework that did not account for the absence of required constitutional procedures. (Doc. 29, PAGEID # 604.)

47. This appeal followed.

## V. SUMMARY OF THE ARGUMENT

48. The judgment should be reversed, vacated, and remanded for further proceedings.

49. First, the District Court misapprehended Plaintiff's jurisdictional allegations. Plaintiff did not merely allege procedural errors inside an otherwise valid criminal proceeding. Plaintiff alleged that the constitutional and statutory prerequisites necessary to invoke jurisdiction and create lawful authority in

his particular proceeding were absent, disputed, undocumented, or incapable of verification. The District Court acknowledged that Plaintiff argued in his Rule 59(e) motion that the Court mischaracterized his allegations as procedural defects within jurisdiction rather than the absence of jurisdictional prerequisites. (Doc. 29, PAGEID # 604.) But the District Court did not correct that error.

50. Second, the District Court improperly applied immunity doctrines before resolving the antecedent premise on which immunity depended. Judicial, prosecutorial, and quasi-judicial immunity assume that the challenged conduct occurred within a protected function and within a lawful proceeding. Plaintiff alleged that lawful authority had not attached and that several challenged acts were administrative, ministerial, coercive, extrajudicial, or outside traditional protected functions. The April 7, 2026 Order nevertheless held that Judge Griffith's conduct was judicial in nature, that Defendant Archer's conduct fell within prosecutorial immunity, and that Defendant Reynolds was entitled to quasi-judicial immunity. (Doc. 24, PAGEID ## 552–554.)

51. Third, the District Court failed to meaningfully address specific objections before adopting the Report and Recommendation. Plaintiff's objections were not vague disagreement with the outcome. They specifically challenged

jurisdiction, immunity, missing records, access to courts, pleading standards, amendment, and the characterization of Plaintiff's allegations. The District Court expressly construed Plaintiff's later immunity memoranda as part of his objections. (Doc. 24, PAGEID ## 550–551.) That confirms the immunity issues were before the Court. The District Court was not required to agree with Plaintiff, but it was required to meaningfully address the specific disputed issues raised.

52. Fourth, the District Court erred by treating the court-ordered Rule 8 repleading as though it were an ordinary prior substantive amendment justifying denial of further amendment. The July 25, 2025 Order stated that no operative complaint yet existed and directed Plaintiff to file an amended complaint conforming to Rule 8(a) and not exceeding twenty pages. (Doc. 10, PAGEID ## 97–98.) Plaintiff's later filing was therefore made in response to a court directive to cure Rule 8 deficiencies. Plaintiff submits that the District Court erred by treating that filing as a prior substantive amendment and by denying further amendment as futile without meaningfully analyzing whether the proposed amendments cured the screening-stage deficiencies.

53. Fifth, the District Court's futility determination was too conclusory. The proposed amendment contained additional allegations concerning probable-

cause review, jurisdictional prerequisites, missing records, access to courts, filing and docketing failures, preservation failures, property retention, off-record proceedings, and Defendant Clark's alleged role. Plaintiff specifically preserved the argument that the proposed amended complaint contained additional allegations directly addressing the deficiencies identified by the Court. (Plaintiff's Rule 59(e) Motion, pp. 12–13.) The District Court nevertheless concluded that further amendment would be futile and dismissed the federal claims with prejudice. (Doc. 24, PAGEID ## 560–561.)

54. Sixth, the District Court's denial of Rule 59(e) relief does not defeat appellate review. Plaintiff's Rule 59(e) motion raised the same legal errors Plaintiff had preserved earlier: mischaracterization of jurisdictional allegations, improper immunity analysis, failure to construe pro se pleadings liberally, denial of amendment, and reliance on an incomplete framework concerning required constitutional procedures. The District Court acknowledged those arguments in its June 11, 2026 Opinion and Order. (Doc. 29, PAGEID # 604.) Repetition of preserved objections is not waiver. It confirms preservation.

55. Finally, the cumulative effect of these errors requires reversal. This case was dismissed at the screening stage, before service, discovery, adversarial

testing, or factual development. Plaintiff's allegations should have been liberally construed, accepted as true, and evaluated under the proper screening standard. Because the District Court assumed lawful authority, applied immunity on that assumption, failed to meaningfully address specific objections, denied amendment without adequate futility analysis, and denied Rule 59(e) relief without correcting those errors, remand is warranted.

## VI. STANDARD OF REVIEW

56. This Court reviews de novo a district court's dismissal for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii), applying the same standards used for dismissal under Federal Rule of Civil Procedure 12(b)(6). Hill v. Lappin, 630 F.3d 468, 470–71 (6th Cir. 2010). At the screening stage, the Court must accept well-pleaded factual allegations as true and draw reasonable inferences in favor of the plaintiff. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–70 (2007).

57. Because Plaintiff proceeded in propria persona, his pleadings were required to be liberally construed and held to less stringent standards than pleadings drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972); Estelle v. Gamble, 429 U.S. 97, 106 (1976); Erickson v. Pardus, 551 U.S. 89, 94 (2007). Liberal

construction does not require the Court to invent claims, but it does require the Court to read the allegations by their substance rather than by technical form.

58. This Court reviews de novo the District Court's legal conclusions concerning judicial immunity, prosecutorial immunity, quasi-judicial immunity, and whether the facts alleged are sufficient to state a claim for relief. Where immunity is resolved at the pleading or screening stage, the reviewing court must evaluate whether the allegations, accepted as true, establish immunity as a matter of law.

59. This Court also reviews de novo whether the District Court properly conducted review of specific objections to a magistrate judge's Report and Recommendation. Under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(3), a district judge must determine de novo any portion of the magistrate judge's disposition that has been properly objected to.

60. A district court's denial of leave to amend is generally reviewed for abuse of discretion. However, where leave to amend is denied on futility grounds, the futility determination is reviewed de novo because it turns on whether the proposed amendment would survive dismissal under Rule 12(b)(6). Rose v. Hartford Underwriters Ins. Co., 203 F.3d 417, 420 (6th Cir. 2000). Leave to amend should be freely given when justice so requires, and denial requires a sufficient justification. Foman v. Davis, 371 U.S. 178, 182 (1962).

61. A district court's denial of a Rule 59(e) motion is generally reviewed for abuse of discretion. However, to the extent the denial rests upon legal conclusions, those legal conclusions are reviewed de novo. A Rule 59(e) motion permits a district court to correct its own alleged errors in the period immediately following judgment. Banister v. Davis, 590 U.S. ___, 140 S.Ct. 1698, 1703 (2020).

## **VII. ARGUMENT**

62. **Issue 1: Jurisdictional Prerequisites**

The District Court erred when it treated the Vinton County Court's general subject-matter jurisdiction as sufficient to establish that jurisdiction was lawfully invoked in Plaintiff's particular proceeding.

63. Plaintiff does not dispute that the Vinton County Court generally possesses statutory authority over misdemeanor and traffic matters. The error is that the District Court treated that general authority as conclusive of a different question: whether jurisdiction and lawful authority were properly invoked in Plaintiff's particular proceeding.

64. The distinction matters. A court may possess general jurisdiction over a class of cases while the lawful exercise of authority in a particular case still depends upon compliance with the constitutional and statutory prerequisites necessary to commence proceedings, bring the accused before the court, provide notice of

the charge, conduct required proceedings, and create a record capable of review. See Pratts v. Hurley, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992; State v. Mbodji, 129 Ohio St.3d 325, 2011-Ohio-2880, 951 N.E.2d 1025.

65. Ohio criminal procedure confirms that distinction. Ohio Criminal Rule 3 defines a criminal complaint as the written charging instrument stating the essential facts constituting the offense charged. Ohio Criminal Rule 4 governs issuance of a warrant or summons upon a complaint and probable-cause determination. Ohio Rev. Code §§ 2935.09 and 2935.10 likewise address the making of criminal complaints and the resulting judicial action required when a complaint or affidavit is presented. These authorities matter because Plaintiff alleged that the commencement, service, presentation, and verification of the charging instruments in his particular proceeding were absent, disputed, undocumented, or incapable of review.

66. Plaintiff's allegations did not merely assert procedural errors inside an otherwise valid criminal case. Plaintiff alleged that the foundational prerequisites necessary to invoke lawful authority were absent, disputed, undocumented, or incapable of verification. Plaintiff alleged, among other things, the absence or unverifiability of lawful commencement of proceedings, service or presentation of charges, probable-cause review, arraignment, an

official record, plea colloquy, and other safeguards necessary to confirm that jurisdiction lawfully attached.

67. The probable-cause issue was independently significant. Gerstein v. Pugh, 420 U.S. 103 (1975), requires a prompt judicial determination of probable cause as a constitutional prerequisite to extended restraint of liberty following a warrantless arrest. Plaintiff alleged that no such probable-cause determination was conducted, recorded, produced, or capable of verification. At the screening stage, that allegation had to be accepted as true and construed in Plaintiff's favor.

68. The Report and Recommendation itself recognized allegations supporting that theory. It recognized that Plaintiff alleged he appeared before Defendant Griffith on May 2, 2024 while being held in jail, that he alleged he was not told who was charging him or served with a complaint, and that a $50,000 bond was imposed. (Doc. 13, PAGEID # 378.) It further recognized that Plaintiff alleged Defendant Clark later informed him he had not yet been arraigned, that Plaintiff raised concerns regarding seized religious property, that Defendant Archer dismissed the weapons-under-disability charge during the May 30, 2024 hearing, and that Plaintiff alleged he was not read the charges or asked to enter a plea during that hearing. (Doc. 13, PAGEID ## 378–379.)

69. The Report and Recommendation also recognized that Plaintiff disputed service of a complaint, that the July 11, 2024 hearing occurred by phone rather than video, that Plaintiff alleged he could not hear Judge Griffith or Archer, that there was no plea colloquy, and that Plaintiff returned plea paperwork marked "without prejudice" and "under duress." (Doc. 13, PAGEID # 380.) It further recognized that, on August 8, 2024, Plaintiff alleged he had no interaction with Judge Griffith or Archer, remained outside the courtroom, and was handed finalized plea paperwork by Defendant Clark. (Doc. 13, PAGEID # 381.)

70. Those allegations placed lawful invocation of jurisdiction in dispute. The District Court nevertheless concluded that Judge Griffith's challenged conduct was judicial in nature because refusing to rule on a motion, accepting or approving a guilty plea, and presiding over hearings are generally judicial functions. (Doc. 24, PAGEID # 552.) That reasoning answered the wrong question. The question was not merely whether those acts are judicial in the abstract. The question was whether the acts occurred within a lawfully invoked proceeding in which judicial authority had attached.

71. The District Court's June 11, 2026 Rule 59(e) order confirms that Plaintiff raised this exact point. The Court stated that Plaintiff argued it mischaracterized his allegations "as procedural defects within jurisdiction rather than the absence of jurisdictional prerequisites," applied immunity despite "the absence of a

lawfully invoked proceeding," and relied on a record that did not account for "the absence of required constitutional procedures." (Doc. 29, PAGEID # 604.) The District Court also recognized that Plaintiff argued immunity does not apply where "no lawful proceeding existed and jurisdiction never attached." (Doc. 29, PAGEID # 604.)

72. The District Court therefore knew the precise distinction Plaintiff was making. But it still treated general jurisdiction and official function as sufficient to defeat the claim at screening. That was error. At the pleading stage, Plaintiff was not required to prove that jurisdiction was absent. Plaintiff was required only to allege facts plausibly placing the lawful invocation of jurisdiction in dispute. Plaintiff did so.

73. **Issue 2: Screening-Stage Inferences**

The District Court erred when it resolved disputed factual and legal inferences against Plaintiff at the screening stage instead of accepting Plaintiff's well-pleaded allegations as true and drawing reasonable inferences in his favor.

74. Screening under 28 U.S.C. § 1915(e)(2)(B)(ii) applies the same standard used under Federal Rule of Civil Procedure 12(b)(6). Hill v. Lappin, 630 F.3d 468, 470–71 (6th Cir. 2010). At that stage, the court must accept well-pleaded factual allegations as true and draw reasonable inferences in favor of the plaintiff.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–70 (2007).

75. The Report and Recommendation stated the screening standard and acknowledged that pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers. (Doc. 13, PAGEID # 377.) But the dismissal did not apply that standard consistently. Plaintiff alleged absence of required proceedings, absence of records, off-record plea handling, lack of service, lack of arraignment, lack of a plea colloquy, coercive property leverage, and post-conviction docketing failures. The District Court treated those allegations as if they merely challenged ordinary judicial, prosecutorial, clerical, and attorney functions.

76. The June 11, 2026 Rule 59(e) order reinforces this error. The District Court stated that it "accepted" Plaintiff's allegations as true and had the benefit of reviewing records from the state-court proceeding attached to the Amended Complaint. (Doc. 29, PAGEID ## 604–605.) But the Court then concluded that the "record failed to show" conduct outside the Vinton County Defendants' official duties. (Doc. 29, PAGEID # 605.) That reasoning effectively required Plaintiff to prove, through the attached record, that the challenged conduct fell outside immunity. That is not the Rule 12(b)(6) standard.

77. The absence of a record confirming arraignment, probable-cause review, plea colloquy, service, or lawful commencement was part of Plaintiff's claim. It was not a reason to presume regularity against him. At screening, where Plaintiff alleged that the very records necessary to verify lawful authority were missing, unavailable, or unproduced, the District Court could not resolve that uncertainty against Plaintiff.

78. Plaintiff preserved this objection. In his objections to the Report and Recommendation, Plaintiff argued that the Report misapplied immunity doctrines, resolved disputed factual matters against him at screening, and failed to properly apply the Rule 12(b)(6) plausibility standard incorporated into § 1915(e)(2). (Plaintiff's Objections to R&R, pp. 2–4.) In his Rule 59(e) motion, Plaintiff again argued that ambiguities concerning whether Defendants' conduct was judicial, prosecutorial, administrative, or based on a lawful proceeding could not be resolved against him at screening. (Plaintiff's Rule 59(e) Motion, pp. 3–5.)

79. Because the District Court resolved disputed inferences against Plaintiff and treated unanswered record questions as defeating the claim, reversal is warranted.

80. **Issue 3: Section 1983 Immunity Text**

The District Court erred when it applied judicially created immunity doctrines without meaningfully addressing Plaintiff's preserved § 1983 textual objection.

81. Section 1983 provides that every person who, under color of state law, deprives another of constitutional rights "shall be liable to the party injured." The statute contains no express textual exception for judges, prosecutors, clerks, or other officials. Plaintiff preserved the argument that the text, history, structure, and remedial purpose of § 1983 do not authorize expanding judge-made immunity doctrines beyond binding precedent's narrowest limits.

82. Plaintiff is not asking this Court to disregard controlling Supreme Court precedent. Plaintiff recognizes that lower courts are bound by vertical stare decisis. But lower courts remain responsible for applying immunity doctrines narrowly, functionally, and consistently with the statutory text. Where binding precedent does not clearly require immunity, the statute's command that constitutional violators "shall be liable" weighs against expanding judge-made immunity.

83. Plaintiff preserved this issue before the District Court. Plaintiff filed a Notice and Memorandum preserving constitutional objections to absolute immunity under § 1983, arguing that § 1983's "shall be liable" language is mandatory and contains no categorical exemptions for classes of officials. (Notice and Memorandum Preserving Constitutional Objections to Absolute Immunity

Under 42 U.S.C. § 1983, pp. 1–3.) Plaintiff also filed a Judicial Memorandum of Law arguing that the original Civil Rights Act of 1871 included Notwithstanding Clause language providing a federal remedy notwithstanding contrary state law, custom, or usage. (Judicial Memorandum of Law, 42 U.S.C. § 1983 Notwithstanding Clause, pp. 1–3.)

84. Plaintiff's preservation argument relied in part on Professor Alexander A. Reinert's article, Qualified Immunity's Flawed Foundation, 111 California Law Review 201 (2023), which argues that modern qualified-immunity doctrine rests on a flawed assumption that § 1983 silently incorporated common-law immunity defenses, and that the original Civil Rights Act of 1871 included Notwithstanding Clause language providing a federal remedy notwithstanding contrary state law, custom, or usage. Plaintiff does not cite Reinert as binding authority. Plaintiff cites Reinert to show that the § 1983 textual and historical objection was preserved, substantial, and required meaningful consideration before immunity doctrines were expanded at screening.

85. Plaintiff again raised the issue in his Griffith immunity memorandum, preserving the argument that absolute judicial immunity lacks textual foundation in § 1983 while also arguing that immunity does not apply under existing doctrine. (Plaintiff's Memorandum in Opposition to Defendant Griffith's Assertion of Absolute Judicial Immunity, pp. 1–4.) Plaintiff raised it

again in his Rule 59(e) motion, arguing that § 1983 contains no immunity exception and that the original Notwithstanding Clause displaced contrary defenses and immunities. (Plaintiff's Rule 59(e) Motion, pp. 1–3.)

86. Plaintiff also preserved the issue in his objections to the Report and Recommendation by objecting that the Report and Recommendation misapplied immunity doctrines and resolved disputed immunity-related facts against Plaintiff at the screening stage. (Plaintiff's Objections to R&R, pp. 2–4, 8–10.)

87. The District Court expressly stated that it construed Plaintiff's two immunity memoranda as part of his objections. (Doc. 24, PAGEID ## 550–551.) The issue was therefore preserved.

88. The District Court nevertheless applied judicial, prosecutorial, and quasi-judicial immunity without meaningfully addressing the statutory-text limitation Plaintiff preserved. The Court did not analyze whether § 1983's text or the original Notwithstanding Clause counseled against expanding immunity beyond the narrowest boundaries required by binding precedent. Nor did the Court explain why Plaintiff's allegations should be treated as categorically barred despite § 1983's mandatory liability language.

89. Plaintiff's position is limited and appellate-appropriate. Even if existing immunity doctrines remain binding, they should not be expanded. Where allegations plausibly involve nonjudicial acts, administrative conduct,

ministerial failures, coercive property leverage, off-record proceedings, missing records, or absence of lawfully invoked authority, the District Court should not enlarge immunity doctrines to bar adjudication at screening.

90. The District Court erred by failing to address this preserved statutory argument before applying immunity as a categorical bar.

**91. Issue 4: Judicial Immunity**

The District Court erred when it concluded that Defendant Griffith was entitled to judicial immunity at the screening stage.

92. Judicial immunity is functional, not title-based. See Forrester v. White, 484 U.S. 219, 227–29 (1988). Judicial immunity protects judicial acts, not every act by a judge. Mireles v. Waco, 502 U.S. 9, 11–12 (1991). Immunity does not apply to nonjudicial acts or acts taken in the complete absence of jurisdiction. Id.; Stump v. Sparkman, 435 U.S. 349, 356–57 (1978).

93. The District Court concluded that Judge Griffith's challenged conduct was judicial in nature because a judge's refusal to rule on a motion, acceptance or approval of a guilty plea, and presiding over a hearing are generally judicial functions. (Doc. 24, PAGEID # 552.) The District Court further stated that all of Plaintiff's allegations addressed Judge Griffith's conduct in adjudicating county-court proceedings. (Doc. 24, PAGEID # 552.)

94. That analysis was too general. Plaintiff did not allege only that Griffith made adverse rulings. Plaintiff alleged the absence of a documented arraignment, absence of probable-cause review, absence of a plea colloquy, off-record or hallway plea handling, failure to ensure required recording, failure to rule on return of non-evidentiary religious property, and alleged conduct connected to missing or unavailable court records. The Report and Recommendation summarized many of the underlying factual allegations, including lack of service, lack of arraignment, no plea colloquy, phone proceedings, "under duress" plea paperwork, no courtroom interaction on August 8, 2024, and pressure to accept the plea to obtain return of property. (Doc. 13, PAGEID ## 378–381.)

95. Plaintiff preserved the judicial-immunity objection in multiple filings. Plaintiff argued in his memorandum opposing Griffith's judicial immunity that, even assuming judicial immunity remains binding under vertical stare decisis, the alleged conduct fell outside protected judicial acts and outside jurisdictional authority. (Plaintiff's Memorandum in Opposition to Defendant Griffith's Assertion of Absolute Judicial Immunity, pp. 1–6.) Plaintiff further argued that the functional test distinguishes adjudicative acts from administrative or ministerial conduct, including off-record plea handling, failure to conduct a plea colloquy, failure to ensure required records, and property-related conduct.

(Plaintiff's Memorandum in Opposition to Defendant Griffith's Assertion of Absolute Judicial Immunity, pp. 4–6.)

96. The District Court expressly construed Plaintiff's two immunity memoranda as part of his objections. (Doc. 24, PAGEID ## 550–551.) Thus, the issue was preserved and before the District Court.

97. The District Court misapplied Mireles by assuming the very jurisdictional fact Plaintiff disputed. Mireles involved a judge's alleged order to officers to bring an attorney into court after the attorney failed to appear. Mireles, 502 U.S. at 12–13. It did not involve allegations that the proceeding itself was never lawfully invoked, that no required arraignment or plea colloquy could be verified, that no probable-cause review appeared, or that records necessary to confirm lawful authority were unavailable.

98. Mireles presupposed an existing judicial proceeding. Plaintiff alleges the prerequisites necessary to invoke such authority were absent, disputed, undocumented, or incapable of verification. Accordingly, the question here is not merely whether presiding over hearings or accepting pleas are generally judicial acts in the abstract. The question is whether those acts occurred within a lawfully invoked proceeding in which judicial authority had attached.

99. At the screening stage, the District Court should have accepted Plaintiff's allegations as true and determined whether those allegations plausibly placed

immunity in dispute. Instead, the Court assumed the existence of a valid proceeding, characterized the challenged conduct at a high level of generality, and applied judicial immunity. That was reversible error.

**100.   Issue 5: Prosecutorial Immunity**

The District Court erred when it concluded that Defendant Archer was entitled to prosecutorial immunity without analyzing the challenged conduct at the proper functional level.

101.   Prosecutorial immunity is also functional. Absolute prosecutorial immunity protects conduct intimately associated with the judicial phase of the criminal process, such as initiating prosecution and presenting the State's case. Imbler v. Pachtman, 424 U.S. 409 (1976). It does not automatically protect every act by a prosecutor. Buckley v. Fitzsimmons, 509 U.S. 259, 269–76 (1993); Burns v. Reed, 500 U.S. 478, 486 (1991).

102.   The District Court held that Defendant Archer was entitled to prosecutorial immunity because Plaintiff challenged Archer's actions in the prosecution of the underlying case and, more specifically, proceedings relating to Plaintiff's guilty plea. (Doc. 24, PAGEID ## 552–553.) The District Court stated that Plaintiff's objections highlighted five allegations relating to the plea-bargaining process: use of property as leverage, conditioning return of property on a plea agreement, rejecting certain plea language, holding property during

negotiations, and participating in an off-record execution of a plea. (Doc. 24, PAGEID # 553.)

103.   That analysis characterized the allegations too broadly. Plaintiff did not merely allege ordinary advocacy during plea negotiations. Plaintiff alleged coercive use of property, continued retention of non-evidentiary property after dismissal of the weapons-under-disability charge, property-for-plea leverage, off-record plea-related conduct, and continued deprivation of religious and non-evidentiary property without a lawful forfeiture basis. The Report and Recommendation recognized that Archer dismissed the weapons-under-disability charge on May 30, 2024, and that Plaintiff alleged his property was not returned. (Doc. 13, PAGEID # 379.) It also recognized Plaintiff alleged he felt pressured to accept the plea to get his property back. (Doc. 13, PAGEID # 381.)

104.   Those allegations do not fit neatly within traditional advocacy. A prosecutor's courtroom advocacy and plea negotiations may be protected, but administrative, coercive, or property-retention conduct is not transformed into protected advocacy merely because it occurred near plea discussions. The proper inquiry is the function performed, not the actor's title or the broad label "plea bargaining."

105. At minimum, Plaintiff's allegations created a functional question that should not have been resolved against him at screening. Plaintiff's objections specifically argued that the R&R and District Court improperly characterized alleged coercive and administrative conduct as ordinary prosecutorial advocacy. (Plaintiff's Objections to R&R, pp. 8–10, 21–22.) The District Court acknowledged Plaintiff's property-leverage allegations but held that those allegations "only prove" prosecutorial immunity because they related to plea bargaining. (Doc. 24, PAGEID # 553.) That was the error: the Court used the alleged coercive property leverage to confirm immunity instead of analyzing whether that conduct was actually advocacy protected by absolute immunity.

106. Because Plaintiff alleged conduct outside traditional prosecutorial advocacy, the District Court erred by dismissing the claims against Archer on absolute prosecutorial immunity at screening.

**107. <u>Issue 6: Quasi-Judicial Immunity</u>**

The District Court erred when it concluded that Defendant Reynolds was entitled to quasi-judicial immunity and that the allegations against her did not state a federal constitutional violation.

108. The District Court stated that Defendant Reynolds is the Vinton County Court Clerk. It held that Plaintiff failed to allege facts establishing her personal involvement in unconstitutional conduct and that, even if he had, Reynolds was

entitled to quasi-judicial immunity. (Doc. 24, PAGEID # 554.) The Court reasoned that the alleged ministerial duties fell within the heartland of conduct quasi-judicial immunity covers. (Doc. 24, PAGEID # 554.)

109. That ruling failed to meaningfully address the nature of the allegations. Plaintiff alleged more than disagreement with ordinary filing activity. Plaintiff alleged missing or withheld records, docketing failures, failure to create appealable rulings, failure to provide records necessary to verify jurisdictional prerequisites, and interference with access to courts. The Report and Recommendation recognized that Plaintiff alleged he submitted public-records requests and later filed multiple documents in the Vinton County Court, including plea withdrawal, delayed appeal, fraud notice, recusal motion, and renewed records requests, but did not receive a response. (Doc. 13, PAGEID # 382.)

110. Quasi-judicial immunity protects functions closely associated with the judicial process when the clerk acts at the direction of a court or performs tasks integral to judicial adjudication. It should not be applied mechanically to every alleged clerk failure. Ministerial duties, record-production duties, docketing duties, and access-to-courts allegations require functional analysis. If a clerk's conduct prevents filings from being docketed, prevents creation of appealable

orders, or prevents access to records needed for review, the conduct is not automatically immune simply because it occurred in a clerk's office.

111.   Plaintiff's objection was specific. He argued that Reynolds' conduct involved ministerial failures and access-to-courts injury, not discretionary judicial decision-making. (Plaintiff's Objections to R&R, pp. 8–10, 21–22.) The District Court acknowledged that Plaintiff provided examples of alleged ministerial failures. (Doc. 24, PAGEID # 554.) But the Court then treated those alleged ministerial failures as within the "heartland" of quasi-judicial immunity without explaining why non-discretionary docketing and record-access failures should receive absolute protection. (Doc. 24, PAGEID # 554.)

112.   The District Court's ruling also failed to address the access-to-courts dimension of the claim. Missing or withheld records and non-docketed filings can injure a litigant's ability to obtain meaningful review. Plaintiff alleged precisely that. The District Court dismissed the claim at too high a level of generality.

113.   Because Plaintiff alleged ministerial, record-related, and access-to-courts conduct not requiring judicial discretion, the District Court erred by applying quasi-judicial immunity at screening.

114.   **Issue 7: Missing Records and Access to Courts**

The District Court erred when it failed to meaningfully address Plaintiff's missing-records and access-to-courts theory.

115. Plaintiff repeatedly alleged that the records necessary to verify lawful commencement, probable-cause review, arraignment, plea proceedings, jurisdictional attachment, and compliance with mandatory safeguards were absent, unavailable, withheld, or incapable of production. Plaintiff did not allege merely that records were inconvenient to obtain. Plaintiff alleged that the missing records prevented meaningful review of whether required constitutional proceedings occurred at all.

116. The missing probable-cause record is independently significant. Gerstein v. Pugh, 420 U.S. 103 (1975), requires a prompt judicial determination of probable cause as a constitutional safeguard following a warrantless arrest and extended restraint of liberty. Plaintiff alleged that no such determination was conducted, recorded, produced, or capable of verification. The absence of a record verifying that required determination supports Plaintiff's claim; it should not have been treated as a reason to presume regularity against him at screening.

117. Ohio Criminal Rule 22 also matters because this case turns in substantial part on the absence of an official record. Plaintiff alleged that required proceedings, including arraignment, plea-related proceedings, and other

material criminal proceedings, were not recorded or could not be produced. Crim.R. 22 confirms that the creation of an official record is not a meaningless technicality. A missing record can prevent a litigant from proving what occurred, proving what did not occur, preserving objections, challenging jurisdiction, and obtaining meaningful review.

118.   The Report and Recommendation recognized allegations that Plaintiff was not served with a complaint, was not told who was charging him, was later told by counsel he had not yet been arraigned, was not read charges, was not asked to enter a plea during the May 30 hearing, experienced a July 11 phone hearing where he could not hear the judge or prosecutor, and alleged no plea colloquy. (Doc. 13, PAGEID ## 378–380.) It also recognized that Plaintiff alleged he had no courtroom interaction on August 8, 2024 and felt pressured to accept the plea to get his property back. (Doc. 13, PAGEID # 381.) It further recognized Plaintiff's allegation that later filings and records requests were not answered. (Doc. 13, PAGEID # 382.)

119.   Those allegations support two related theories. First, the missing records bear on whether lawful jurisdiction was ever invoked and whether constitutional prerequisites occurred. Second, the missing records and alleged failure to docket, respond to, or rule on filings injured Plaintiff's ability to seek meaningful review.

120. Meaningful review depends on an adequate record. See Griffin v. Illinois, 351 U.S. 12 (1956); Draper v. Washington, 372 U.S. 487 (1963); Mayer v. City of Chicago, 404 U.S. 189 (1971); M.L.B. v. S.L.J., 519 U.S. 102 (1996). Where a litigant cannot obtain the records necessary to verify proceedings, challenge jurisdiction, preserve issues, or appeal, access to courts is impaired. See Bounds v. Smith, 430 U.S. 817 (1977); Christopher v. Harbury, 536 U.S. 403 (2002). Jameson v. Desta, 5 Cal.5th 594 (2018), while not binding on this Court, is also persuasive authority recognizing that the absence of an adequate verbatim record can defeat meaningful appellate review.

121. Plaintiff preserved this argument. In his objections, he argued that no recorded arraignment transcript or audio reflecting advisement of rights appeared in the court record, that no recorded Crim.R. 11 plea colloquy occurred, that the August 8 disposition lacked an on-record colloquy, and that post-conviction filings and jurisdictional challenges were not docketed or adjudicated by written order, preventing creation of appealable rulings. (Plaintiff's Objections to R&R, pp. 21–22.)

122. The District Court did not meaningfully analyze this access-to-courts injury. Instead, it treated the allegations as ordinary challenges to judicial, prosecutorial, clerical, or attorney functions. That missed the point. Plaintiff alleged that the absence of records itself prevented verification and review. The

injury was not only the underlying criminal process; it was the inability to obtain a record adequate to challenge that process.

123. The District Court therefore erred by failing to separately analyze Plaintiff's missing-records and access-to-courts theory.

**124.** **Issue 8: De Novo Review of Objections**

The District Court failed to provide individualized de novo review of several specific objections before adopting the Report and Recommendation.

125. Under 28 U.S.C. § 636(b)(1), when a party objects to a magistrate judge's proposed findings or recommendations, the district judge must make a de novo determination of the portions to which objection is made. Federal Rule of Civil Procedure 72(b)(3) likewise provides that the district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.

126. The purpose of objections is to focus the district court's attention on disputed issues requiring review. Thomas v. Arn, 474 U.S. 140, 147–48 (1985). The Sixth Circuit has held that properly made objections preserve disputed issues and require review, while vague or general objections are insufficient. United States v. Walters, 638 F.2d 947, 949–50 (6th Cir. 1981); Miller v. Calhoun County, 408 F.3d 803, 815 (6th Cir. 2005).

127. Plaintiff's objections were specific. Plaintiff objected that the Report and Recommendation misapplied immunity doctrines, resolved disputed factual matters against him at screening, and failed to properly apply the Rule 12(b)(6) plausibility standard incorporated into § 1915(e)(2). (Plaintiff's Objections to R&R, pp. 2–4.) Plaintiff objected that the Amended Complaint was filed under a court directive to shorten the original pleading and that any lack of elaboration reflected court-ordered compression, not absence of factual basis. (Plaintiff's Objections to R&R, pp. 4–5.) Plaintiff objected to the judicial-immunity analysis and identified the absence of service, recorded arraignment, plea colloquy, courtroom proceeding, and record safeguards. (Plaintiff's Objections to R&R, pp. 8–10, 21–22.)

128. Plaintiff also filed immunity memoranda specifically addressing judicial immunity and the § 1983 immunity issue. The District Court expressly construed those memoranda as part of Plaintiff's objections. (Doc. 24, PAGEID ## 550–551.) Thus, the District Court was required to address those objections as part of its de novo review.

129. The District Court was not required to agree with Plaintiff. But de novo review required the Court to meaningfully address the specific disputed issues Plaintiff identified. The Court did not meaningfully address the distinction between general subject-matter jurisdiction and lawful invocation of

jurisdiction in Plaintiff's particular case. It did not meaningfully address Plaintiff's missing-records objection. It did not meaningfully analyze Plaintiff's access-to-courts theory. It did not address the § 1983 Notwithstanding Clause argument. And it characterized allegations concerning administrative conduct, ministerial failures, property leverage, and off-record proceedings at too high a level of generality.

130.   Instead, the District Court adopted the Report and Recommendation while presupposing the existence of a validly invoked criminal proceeding, treating the jurisdictional issue as resolved, and applying immunity doctrines without directly answering Plaintiff's distinction between general jurisdiction and invoked jurisdiction. (Doc. 24, PAGEID ## 552–554.) The District Court then dismissed the federal claims with prejudice. (Doc. 24, PAGEID ## 560–561.)

131.   Because Plaintiff's objections identified discrete factual and legal issues requiring individualized review, and because several material objections were not meaningfully analyzed, remand is warranted.

**132.   <u>Issue 9: Leave to Amend</u>**

The District Court abused its discretion and legally erred when it denied further amendment as futile without meaningfully analyzing whether Plaintiff's proposed amendments cured the deficiencies identified during screening.

133. Leave to amend should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2); Foman v. Davis, 371 U.S. 178, 182 (1962). Denial of leave requires a sufficient justification such as undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice, or futility. Id. Where futility is the basis for denial, the proposed amendment is evaluated under the Rule 12(b)(6) standard. Rose v. Hartford Underwriters Ins. Co., 203 F.3d 417, 420 (6th Cir. 2000). A proposed amendment is futile only if it could not withstand dismissal. Id. The Sixth Circuit has also recognized that amendment may remain appropriate after screening dismissal. LaFountain v. Harry, 716 F.3d 944, 951 (6th Cir. 2013).

134. The procedural posture matters. The July 25, 2025 Order stated that Plaintiff's initial complaint did not comply with Rule 8, that the original complaint contained legal argument, and that Plaintiff would be given an opportunity to file an Amended Complaint not exceeding twenty pages. (Doc. 10, PAGEID # 98.) The same order stated that, until Plaintiff submitted an operative compliant pleading, the case could not proceed. (Doc. 10, PAGEID # 97.) Plaintiff's later filing labeled "Amended Complaint" was therefore filed in response to a court order requiring a shortened Rule 8 repleading. It functioned as the first operative complaint meaningfully screened on the merits.

135. The District Court later treated the existence of that filing as part of the reason further amendment was unwarranted. The June 11, 2026 order stated that

Plaintiff argued his Amended Complaint was "not a substantive amendment to a valid complaint" and that dismissal based on prior amendment was clearly erroneous. (Doc. 29, PAGEID # 606.) The Court rejected that argument, stating that Plaintiff "did, in fact, substantively amend his Complaint by adding new claims and attaching exhibits," but also stated that dismissal rested on futility. (Doc. 29, PAGEID # 606.)

136.   The District Court's futility analysis was too generalized. Plaintiff's proposed amendment contained additional allegations and clarifications concerning absence of probable-cause review, missing records, jurisdictional prerequisites, access to courts, filing and docketing failures, preservation failures, property retention, off-record proceedings, Defendant Clark's alleged role, and the inability to verify required proceedings. Plaintiff preserved that argument in his Rule 59(e) motion. (Plaintiff's Rule 59(e) Motion, pp. 12–13.)

137.   The District Court concluded that the proposed amendment contained no new factual allegations regarding the Vinton County Defendants and therefore failed to overcome the deficiencies identified in the R&R. (Doc. 29, PAGEID # 606.) But Plaintiff had identified additional allegations concerning jurisdictional prerequisites, missing records, access to courts, record preservation, property retention, and off-record proceedings. If the Court believed those allegations

were still insufficient, it needed to meaningfully analyze why they did not cure the identified deficiencies under Rule 12(b)(6).

138.   The District Court also denied amendment before service, discovery, adversarial testing, or factual development. No defendant had appeared to show prejudice. The screening-stage posture, Plaintiff's pro se status, the Rule 8 repleading history, and the additional allegations all required a more careful futility analysis.

139.   Because the District Court treated Plaintiff's court-ordered Rule 8 repleading as though it were an ordinary prior substantive amendment, failed to meaningfully analyze the specific proposed allegations, and denied reconsideration without addressing how those allegations failed under Rule 12(b)(6), the denial of amendment should be reversed.

**140.   Issue 10: Rule 59(e)**

The District Court erred when it denied Rule 59(e) relief on the ground that Plaintiff's motion largely repeated prior objections without addressing whether those repeated objections identified material legal or factual errors in the dismissal order.

141.   Rule 59(e) allows a district court to correct its own errors immediately after judgment. Banister v. Davis, 590 U.S. ___, 140 S.Ct. 1698, 1703 (2020). Relief is appropriate to correct clear error of law, prevent manifest injustice, account

for newly discovered evidence, or address an intervening change in controlling law. See GenCorp, Inc. v. American Int'l Underwriters, 178 F.3d 804, 834 (6th Cir. 1999).

142.   Plaintiff's Rule 59(e) motion did not raise new issues manufactured after judgment. It identified the same core errors Plaintiff had preserved earlier: mischaracterization of jurisdictional allegations, immunity despite absence of a lawfully invoked proceeding, reliance on a record that did not account for absence of required constitutional procedures, failure to liberally construe pro se pleadings, and denial of amendment based on an incorrect understanding of procedural posture. (Plaintiff's Rule 59(e) Motion, pp. 3–5.)

143.   The District Court recognized those arguments. It stated that Plaintiff argued the Court mischaracterized his allegations "as procedural defects within jurisdiction rather than the absence of jurisdictional prerequisites," applied immunity despite "the absence of a lawfully invoked proceeding," relied on a record and framework that did not account for required constitutional procedures, failed to liberally construe his pleadings, and denied amendment based on procedural posture. (Doc. 29, PAGEID # 604.) The Court further recognized Plaintiff's argument that "immunity does not apply where no lawful proceeding existed and jurisdiction never attached." (Doc. 29, PAGEID # 604.)

144. The District Court then rejected the motion, in part because Plaintiff had raised the same arguments in his objections. (Doc. 29, PAGEID ## 604–605.) That does not resolve the issue. Repetition of preserved objections is not waiver. It confirms preservation. Rule 59(e) permits a party to ask the District Court to correct alleged errors after judgment. If the repeated objections identified clear legal error, the fact that they were repeated did not make them irrelevant.

145. Nor does the District Court's description of Plaintiff's Rule 59(e) motion as disagreement with the ruling insulate the underlying rulings from appellate review. The central question remains whether the District Court correctly construed Plaintiff's allegations, properly applied immunity, adequately addressed jurisdictional and record-based objections, properly denied amendment as futile, and correctly denied Rule 59(e) relief.

146. Federal Rule of Appellate Procedure 4(a)(4) confirms that a timely Rule 59(e) motion is part of the ordinary path toward appellate review because it suspends the finality of judgment for appeal purposes until the motion is resolved. Plaintiff's Rule 59(e) motion placed the alleged errors squarely before the District Court and preserved them for this Court.

147. Accordingly, the District Court's conclusion that Plaintiff's Rule 59(e) motion repeated prior objections provides no independent basis to affirm.

Instead, it confirms that the disputed issues were repeatedly presented to the District Court, preserved throughout the proceedings, and remain properly before this Court.

**148.   <u>Issue 11: Cumulative Effect</u>**

The cumulative effect of the District Court's screening-stage errors requires reversal, vacatur, and remand.

149.   This case was dismissed at screening, before service, discovery, adversarial testing, or factual development. Plaintiff proceeded in propria persona. The District Court required a shortened Rule 8 repleading, then screened that pleading, overruled objections, denied further amendment, dismissed federal claims with prejudice, and denied Rule 59(e) relief. (Doc. 10, PAGEID ## 97–98; Doc. 24, PAGEID ## 560–561; Doc. 29, PAGEID # 606.)

150.   Each error independently supports remand. The District Court conflated general jurisdiction with lawful invocation of jurisdiction in the particular proceeding. It resolved disputed inferences against Plaintiff at screening. It applied judicial, prosecutorial, and quasi-judicial immunity at too high a level of generality. It failed to meaningfully address Plaintiff's preserved § 1983 textual objection. It failed to separately analyze missing-records and access-to-courts injury. It failed to provide individualized de novo review of several

specific objections. It denied amendment without a sufficient futility analysis. And it denied Rule 59(e) relief without correcting those errors.

151. Together, those errors produced dismissal with prejudice before Plaintiff received factual development or meaningful consideration of the proposed amended allegations. At minimum, remand is required so the District Court may evaluate Plaintiff's allegations under the proper screening standard, address the specific objections, and determine amendment under the correct legal framework.

152. For these reasons, the judgment should be reversed, the dismissal vacated, the denial of Rule 59(e) relief vacated, and the case remanded for further proceedings.

## VIII. CONCLUSION

153. For the foregoing reasons, Plaintiff respectfully submits that the District Court erred in dismissing the action at the screening stage, erred in adopting the Report and Recommendation without meaningfully addressing several preserved objections, erred in concluding that amendment would be futile without adequately analyzing the proposed amended allegations, and erred in denying Rule 59(e) relief.

## IX. RELIEF REQUESTED

154. Plaintiff respectfully requests that this Court:

155.  Reverse the judgment of dismissal;

156.  Vacate the District Court's order adopting the Report and Recommendation;

157.  Vacate the denial of Plaintiff's Rule 59(e) motion;

158.  Hold that the District Court applied an erroneous futility analysis regarding Plaintiff's proposed amended complaint;

159.  Remand this matter for further proceedings consistent with this Court's opinion;

160.  Direct that Plaintiff be permitted to proceed upon a properly evaluated amended complaint; and

161.  Award such further relief as this Court deems just and proper.

Regards,

*Jeremy Spencer (without prejudice or recourse)*

_____ Date:_____

Jeremy Spencer (without prejudice or recourse)
In propria persona Sui juris          Appellant
C/O [1891 Grovepointe Dr.]
[Florence, KY 41042]
330-396-3566
Spencerj2121@yahoo.com

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), Plaintiff-Appellant Jeremy Spencer, proceeding in propria persona, certifies, to the best of his knowledge, that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).

Federal Rule of Appellate Procedure 32(a)(7)(A) provides: "A principal brief **may not exceed 30 pages**, or a reply brief 15 pages, unless it complies with Rule 32(a)(7)(B)."

Federal Rule of Appellate Procedure 32(a)(7)(B)(i) provides that "[a] principal brief is acceptable if it" "contains **no more than 13,000 words**" **or** "uses a monospaced face and contains no more than **1,300 lines of text**."

Federal Rule of Appellate Procedure 32(f) provides that, "[i]n computing any length limit, headings, footnotes, and quotations count toward the limit but the following items do not:" including the "cover page," "disclosure statement," "table of contents," "table of citations," "statement regarding oral argument," "certificates of counsel," "signature block," and "proof of service."

Federal Rule of Appellate Procedure 32(g)(1) provides that "[a] brief submitted under Rules 28.1(e)(2), 29(b)(4), or 32(a)(7)(B)—and a paper submitted under Rules 5(c)(1), 21(d)(1), 27(d)(2)(A), 27(d)(2)(C), 35(b)(2)(A), or 40(b)(1)—must

include a certificate by the attorney, or an unrepresented party, that the document complies with the type-volume limitation."

This brief uses a proportionally spaced typeface of 14-point font or larger.  Federal Rule of Appellate Procedure 32(a)(7)(B)(i) states that "a principal brief is acceptable if it contains no more than 13,000 words," and Rule 32(f) explains that "in computing any length limit, headings, footnotes, and quotations count toward the limit but" certain items, including the cover page, tables, and certificates, "do not." In that context, I note that **this brief contains 10,075 words, about 1019 lines**, and by my count **52 pages** excluding the portions exempted by Rule 32(f), including the cover/caption page, disclosure statement, table of contents, table of authorities, signature block, and proof of service.

Federal Rule of Appellate Procedure 32(a)(7)(A) provides: "A principal brief **may** not exceed 30 pages, or a reply brief 15 pages, unless it complies with Rule 32(a)(7)(B**).**" **Because this principal brief contains fewer than 13,000 words, it complies with Federal Rule of Appellate Procedure 32(a)(7)(B)(i) even if though the document exceeds 30 pages due to the use of the word 'may'" should be removed.**

**Even though the brief is over 30 pages, it complies by using the 13,000-word limit under Rule 32(a)(7)(B)**

Spencer v. Archer, Griffith et.al.  _Case #___26-3462_____                Mot. Leave More PG

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**
100East fifth Street Room 540
potter Stewart US Court house
Cincinnati Ohio 45202

| | | |
|---|---|---|
| Jeremy Spencer_____ | ) | |
| **C/O [**1891 Grovepointe dr. | ) | **fed  district case:** 2:25-cv-00785-SDM-KAJ |
| Florence Ky 41042**]** | **)** | |
| **Plaintiff** | **)** | |
| | ) | **Appeal Case No:_____26-3462_____** |
| vs. | ) | |
| | ) | |
| **William L. Archer, Jr.    Et.Al_____** | **)** | |
| **Defendant** | **)** | |

<u>**MOTION FOR LEAVE TO FILE APPELLANT'S BRIEF IN EXCESS OF ANY**
**APPLICABLE PAGE OR LENGTH LIMIT, OR IN THE ALTERNATIVE, TO ACCEPT**
**THE BRIEF AS FILED**</u>

1. Plaintiff-Appellant Jeremy Spencer, proceeding in propria persona, respectfully

   moves this Court for leave to file his principal brief in excess of any applicable

   page limitation, word limitation, line limitation, or other length limitation that

   the Court determines applies. In the alternative, Plaintiff-Appellant requests that

   the Court accept the brief as filed if the Court or Clerk determines that the brief

   is technically noncompliant.

2. This motion is filed as a precaution. Plaintiff-Appellant does not intend to

   violate the Federal Rules of Appellate Procedure, the Sixth Circuit Rules, or any

   order of this Court. Plaintiff-Appellant believes that his principal brief complies

   with Federal Rule of Appellate Procedure 32(a)(7)(B) because, to the best of his

   knowledge and calculation, the brief contains fewer than 13,000 words,

excluding the portions exempted by Federal Rule of Appellate Procedure 32(f). However, because Plaintiff-Appellant proceeds without counsel, without free electronic filing access, and without unrestricted PACER access, he files this motion out of caution in case he has misunderstood or misapplied any formatting, page-count, word-count, or type-volume requirement.

3.  The brief exceeds thirty pages when printed as a complete document, but that is primarily because Plaintiff-Appellant used readable formatting, 14-point font, record citations, headings, and separate sections necessary to present the issues clearly. Plaintiff-Appellant understands Federal Rule of Appellate Procedure 32(a)(7) to permit a principal brief exceeding thirty pages when the brief satisfies the type-volume limitation. Nevertheless, to avoid any possible procedural issue, Plaintiff-Appellant respectfully requests leave to file the brief to the extent leave is required.

4.  **Good cause** exists for the requested relief. This appeal arises from screening-stage dismissal before service, discovery, or factual development. The issues include jurisdictional prerequisites, screening-stage inferences, judicial immunity, prosecutorial immunity, quasi-judicial immunity, missing records, access to courts, de novo review of objections, denial of amendment, Rule 59(e), and cumulative error. **Plaintiff-Appellant has attempted to present**

Spencer v. Archer, Griffith et.al.  _Case #___26-3462_____          Mot. Leave More PG

**those issues in an organized and concise manner, but the issues overlap and require enough factual and procedural context for meaningful review.**

5. Plaintiff-Appellant further states that this request is not made for delay, harassment, or tactical advantage. **It is made to preserve meaningful appellate review and to prevent dismissal or rejection based on a technical misunderstanding by an unrepresented indigent litigant**. Plaintiff-Appellant respectfully submits that accepting the brief would not prejudice Appellees because the brief has been organized by numbered sections, includes a table of contents and table of authorities, and identifies the specific issues for review.

6. For these reasons, Plaintiff-Appellant respectfully requests that this Court grant leave to file his principal brief in excess of any applicable page, word, line, or type-volume limitation that the Court determines applies. In the alternative, Plaintiff-Appellant requests that the Court accept the brief as filed or permit Plaintiff-Appellant a reasonable opportunity to correct any technical defect identified by the Clerk.

Regards:

*Jeremy Spencer (without prejudice or recourse)*

Jeremy Spencer
Plaintiff-Appellant, in propria persona          DATE: July 2, 2026
c/o [1891 Grovepointe Dr.]
[Florence, KY 41042]
330-396-3566
Spencerj2121@yahoo.com