RECEIVED
08/05/2026
KELLY L. STEPHENS, Clerk

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | |
|---|---|
| Jeremy Spencer<br>    Plaintiff-Appellant,<br><br>v.<br><br>WILLIAM L. ARCHER, JR.; JEFFREY R. GRIFFITH; SHELLEY REYNOLDS; SABRINA CLINE; JOHN CLARK, JR.; et al.,<br>    Defendants-Appellees. | No. 26-3462<br><br>Appeal from<br>S.D. Ohio<br>No. 2:25-cv-00785-SDM-KAJ |

### PROPOSED LIMITED SUPPLEMENTAL BRIEF OF PLAINTIFF-

### APPELLANT JEREMY SPENCER

This proposed brief supplies a narrow clarification of issues already presented in Spencer's principal brief. It does not add evidence or ask the Court to expand the record. It explains (1) what the District Court meant by "the record"; (2) why the attached state-court papers did not disprove Spencer's allegations—including that he was never served with a proper, valid charging instrument—at screening; (3) why the felony charge, four aggravated-menacing counts, and missing-record allegations support a meaningful-review injury; and (4) why "under color of state law" is compatible with an allegation that an official misused or exceeded lawful authority.

### I. THE ORDER'S OWN WORDS IDENTIFY WHICH "RECORD" IT USED.

The June 11 order summarized Spencer's argument that the District Court relied "on a record and framework that did not account for the absence of required constitutional procedures." (Doc. 29, PAGEID # 604.) It also recognized his

allegation that the challenged conduct "occurred off-record, without required procedures, and through coercive or administrative means." (Id., PAGEID ## 604–605.) The order then stated:

> *In so ruling, the Court not only accepted Mr. Spencer's allegations regarding the Vinton County Defendants' conduct as true, but the Court also had the benefit of reviewing records from the state court proceeding included with his Amended Complaint. The record failed to show any conduct by the Vinton County Defendants that fell outside of their official duties.*

Doc. 29, PAGEID # 605 (emphasis added). The immediate antecedent of "the record" is therefore the "records from the state court proceeding included with [the] Amended Complaint." The order did not identify an official audio recording, video recording, stenographic record, transcript, certified docket, or complete certified Vinton County record. It did not state that the federal court independently procured any such material.

Spencer did not attach those papers to prove that the state proceedings were regular or that Defendants acted within immunity-protected duties. He attached them to show the defects he expressly alleged: the absence of a valid charging instrument and proof of service; forms that do not establish an arraignment, probable-cause determination, Rule 11 colloquy, or valid plea; signatures and

judgments whose authenticity or legal effect he disputes; and paper entries that cannot establish what occurred orally or off the record. The papers were evidence of the pleaded problem, not a concession that the problem did not exist.

**The papers may bear case numbers, captions, titles, signatures, or other features giving them the appearance of official legal authority. That appearance is consistent with Spencer's allegation that governmental power was exercised under color of state law**; it does not establish that the papers, or the acts they purport to record, were valid, lawful, jurisdictionally sufficient, or immune. By requiring the exhibits themselves to show conduct outside "official duties," the order treated <u>contested papers as exculpatory proof</u> and drew an <u>inference against Spencer at screening.</u> Spencer's pleaded theory is the opposite: **<u>officials allegedly used governmental positions, forms, and processes to create the appearance of lawful authority while omitting or bypassing required procedures.</u>**

The distinction matters. A Vinton County paper can become an exhibit in the federal district-court record when attached to the amended complaint. Under Federal Rule of Appellate Procedure 10(a), that exhibit then becomes part of the record on this appeal. But filing a paper in federal court does not transform it into a verbatim or equivalent record of what was said, heard, waived, or omitted during a Vinton County proceeding.

Thus, the District Court's sentence is best read as an assessment of attached state-court papers—not as a finding based on recordings or transcripts Spencer requested but never received. If no recording or transcript was attached or otherwise filed in the District Court, it is not part of the Rule 10(a) appellate record. See Fed. R. App. P. 10(a); 6 Cir. R. 11(a)(1).

## II. THE ATTACHED PAPERS DID NOT DISPROVE THE ALLEGATIONS.

A paper entry may show only that a clerk or court placed an alleged plea or judgment on paper. It does not, by itself, establish that Spencer was served with a proper, valid charging instrument, received and understood the accusation, was arraigned, received a required probable-cause determination, participated in a plea colloquy, was present for sentencing, or knowingly, intelligently, and voluntarily entered a plea. Those questions concern notice, service, oral events, and procedural safeguards that a docket sheet or allegedly signed or attributed form may not reveal.

Spencer specifically alleged that he was never served with any proper, valid charging instrument sufficient to notify him of the accusation. See Principal Br. ¶¶ 68–69, 75–78, 94, 118, 127. Ohio Criminal Rule 3 requires a complaint to state the essential facts constituting the offense, identify the statute or ordinance allegedly violated, and be made under oath. The Ohio Supreme Court has stated: "A complaint that meets the requirements of Crim.R. 3 invokes the subject-matter

jurisdiction of a trial court." State v. Mbodji, 129 Ohio St.3d 325, 2011-Ohio-2880, syllabus. For a traffic charge, Ohio Traffic Rule 3 makes the Ohio Uniform Traffic Ticket the complaint and summons and requires the issuing officer to complete, sign, and serve it before filing the court record. The existence of a docket entry, later form, or purported judgment does not itself establish that a qualifying charging instrument existed and was validly served. Spencer alleges the absence of a qualifying complaint and valid service, not merely a minor defect in otherwise valid paperwork. This allegation bears on notice, the opportunity to defend, and whether the attached papers could disprove Spencer's pleaded account; it need not be treated as a concession that later paperwork cured the alleged failure.

Any reference in this brief to a form, plea paper, or judgment as "signed" means only allegedly signed or bearing a signature attributed to Spencer. Spencer does not concede that he knowingly signed or adopted any plea paper or judgment, that an attributed signature is authentic, or that any such paper reflects a knowing, intelligent, and voluntary plea.

The point is especially important here because Spencer challenges the legal effect, reliability, and origin of the papers themselves. He alleges that no valid plea agreement or Rule 11 colloquy occurred and that papers were handled off the record while he remained outside the courtroom. Treating the papers' existence as

conclusive proof of a valid proceeding assumes the truth of the matter being contested.

At screening under 28 U.S.C. § 1915(e)(2)(B)(ii), the Rule 12(b)(6) standard applies. Hill v. Lappin, 630 F.3d 468, 470–71 (6th Cir. 2010). A court may consider attached exhibits, but it may prefer an exhibit over pleaded facts only to the extent the exhibit actually contradicts or utterly discredits them. See Gavitt v. Born, 835 F.3d 623, 640–41 (6th Cir. 2016); Chrestman v. Metro. Gov't of Nashville & Davidson Cnty., No. 24-6018, slip op. at 9–10 (6th Cir. Sept. 16, 2025). Silence is not contradiction. The absence from the papers of proof that an official acted outside a protected function does not affirmatively establish that every alleged act was protected.

The District Court's "official duties" formulation also described the actors at too high a level of generality. The immunity inquiry is functional. The relevant questions include whether the alleged act was adjudicative, advocative, discretionary, administrative, or ministerial; whether a clerk acted at a judge's direction; and, for judicial immunity, whether the act was judicial and within jurisdiction. See Forrester v. White, 484 U.S. 219, 227–29 (1988); Mireles v. Waco, 502 U.S. 9, 11–12 (1991); Buckley v. Fitzsimmons, 509 U.S. 259, 269–76 (1993); Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 435–37 (1993). "Official duty" is not a substitute for that function-by-function analysis.

Page **6** of **18**

## III. "RECORD" MUST ALSO BE DISTINGUISHED BY MEDIUM AND LEGAL FUNCTION.

Ohio law distinguishes paper case records from the recording of proceedings. Ohio Revised Code § 1907.20(B) requires a county-court clerk to keep the court's journals, records, books, and papers; record the court's proceedings; maintain an index and docket; note filings and service; and enter the court's orders, judgments, and proceedings. Those duties concern the paper or electronic case file and docket. Section 1907.31(A)–(B) makes the Ohio Rules of Criminal Procedure and Appellate Procedure applicable to county-court proceedings and appeals.

Ohio Criminal Rule 22 addresses a different record—the means used to preserve what occurred during proceedings. It provides: "In serious offense cases all proceedings shall be recorded." Under Criminal Rule 2(C), a "serious offense" means "any felony, and any misdemeanor for which the penalty prescribed by law includes confinement for more than six months." Rule 22 allows shorthand, stenotype, or another adequate mechanical, electronic, or video recording device. In petty-offense cases, required counsel waivers must be recorded, and all proceedings must be recorded if any party requests it. Ohio Appellate Rule 9(A)(2) separately provides: "The trial court shall ensure that all proceedings of record are

recorded by a reliable method." Ohio Traf.R. 20 applies the Criminal Rules when the Traffic Rules prescribe no procedure.

The principal brief states that the Vinton County matter included a weapons-under-disability felony charge until May 30, 2024. Every appearance or combined proceeding that concerned that felony was a serious-offense proceeding for which Rule 22 required recording. The attached papers also identify four aggravated-menacing charges under R.C. 2903.21 but do not identify any enhancement that made those charges felonies. Ordinary aggravated menacing is a first-degree misdemeanor carrying no more than 180 days in jail, R.C. 2903.21(B); R.C. 2929.24(A)(1), and each count is therefore individually classified as a petty offense under Criminal Rule 2(D). But four simultaneous counts exposed Spencer to possible combined confinement far exceeding six months. When misdemeanor sentences are made consecutive, Ohio law permits an aggregate term of as much as eighteen months. R.C. 2929.41(B)(1). If a proceeding concerned only misdemeanor aggravated menacing or another petty offense, Rule 22 required all proceedings to be recorded upon a party's request. Appellate Rule 9(A)(2) separately directed the trial court to ensure that all proceedings of record were recorded by a reliable method.

Calling each count a "petty offense" does not make the combined prosecution petty in any practical or meaningful sense. The government should not be permitted to

multiply the charges and potential punishment while dividing those same charges when determining whether basic procedural protections apply. Any period of incarceration can cost a person employment, housing, family relationships, religious observances, and irreplaceable life events. A prosecution threatening combined confinement far beyond six months is serious in its actual consequences, regardless of the label placed on each individual count. At minimum, fundamental fairness and meaningful appellate review required an adequate and reliable means of preserving what occurred.

Lewis v. United States, 518 U.S. 322, 330 (1996), addressed whether multiple petty offenses created a Sixth Amendment jury-trial right, and State v. Perkins, 2008-Ohio-5060, ¶¶ 42–44 (10th Dist.), applied the nonaggregation rule when determining which plea procedure governed. Neither decision held that due process permits the absence of any official recording or adequate substitute when the missing record prevents meaningful review of an alleged plea and judgment. Their rule against aggregation for offense classification should not be extended to permit combined confinement far exceeding six months while leaving no reliable record of how that result was produced.

State v. Wheeler confirms the importance of an adequate record in an aggravated-menacing case. 2023-Ohio-2884, ¶¶ 7–13 (1st Dist.). Although aggravated menacing was treated there as a petty offense, the court reversed

because the incomplete trial recording deprived the defendant of the ability to substantively contest critical issues on appeal. Id. ¶ 11. Wheeler also declined to treat the absence of a written recording request as conclusive where deficiencies in the record made it impossible to determine whether an oral request occurred. Id. ¶ 8. Here, the alleged absence of the proceeding record likewise prevents resolution at screening of what was requested, stated, heard, or waived, while Spencer's repeated later requests for the record establish nonproduction. Those allegations could not be converted into an inference that the required events occurred regularly.

**IV. THE ALLEGED CONSTITUTIONAL DEPRIVATION IS THE LOSS OF MEANINGFUL REVIEW OF IDENTIFIED CLAIMS.**

The constitutional requirement should be applied to the claims Spencer actually sought to present. He needed a "record of sufficient completeness" to permit proper consideration of those claims. Mayer v. City of Chicago, 404 U.S. 189, 194 (1971). A substitute would be adequate only if it provided "an equivalent report of the events at trial from which the appellant's contentions arise." Draper v. Washington, 372 U.S. 487, 495 (1963); see also Griffin v. Illinois, 351 U.S. 12, 19–20 (1956). No such record or equivalent was available here, according to the pleaded allegations.

The missing materials are complementary. Spencer alleged that no proper charging instrument or proof of valid service established what accusation was lawfully initiated and served, while a recording, transcript, or adequate equivalent was needed to establish what occurred orally. Taken together, those omissions prevented him from meaningfully demonstrating that: (1**) Spencer was never served with a proper, valid charging instrument; (2) no arraignment or advisement occurred; (3) no prompt probable-cause determination occurred after the alleged warrantless arrest; (4) no Rule 11 colloquy established a knowing, intelligent, and voluntary plea; (5) he could not hear or participate in the July 11 telephone proceeding; (6) he remained outside the courtroom and had no colloquy on August 8; and (7) jurisdictional objections, a plea-withdrawal motion, and post-conviction filings were not docketed or resolved by appealable orders**. See Principal Br. ¶¶ 115–123, 127.

**<u>To say they are immune because it's generally a judicial/ prosecutors ect… function/type of act when the law clearly states certin actions are mandatory, amounts to lawlessness of the county and the state and that these people are in fact tyrannical dictators that kidnap people off the street for their slave trade jails</u>**.

Those are not abstract complaints about inconvenient access to records. They identify nonfrivolous underlying challenges and explain how the missing

record blocked their presentation. See Christopher v. Harbury, 536 U.S. 403, 413–16 (2002). A paper disposition is not an adequate substitute where the alleged errors consist of what was never said, never heard, never waived, never recorded, or never ruled upon.

The Fourth District recently applied these principles when the recording of a plea hearing could not be located. "Without the plea hearing transcript, we simply cannot determine the merits of appellant's argument about his plea agreement." State v. Dayton, 2026-Ohio-2623, ¶ 41 (4th Dist.). The court found material prejudice because the appellant could not meaningfully challenge the plea and reversed the conviction. Id. ¶¶ 41–44. Because Vinton County is within the Fourth District, Dayton is especially relevant to the alleged inability to test what occurred during Spencer's purported plea proceeding.

The missing-record theory therefore has two related uses. First, the absence of an adequate record supports the plausibility of the allegation that required procedures did not occur and prevents a presumption of regularity at screening. Second, the failure to create, preserve, produce, docket, or rule allegedly caused a separate access-to-courts injury by preventing meaningful review of the identified claims.

## V. UNDER COLOR OF STATE LAW AND IMMUNITY ARE SEPARATE QUESTIONS.

The phrase "under color of law" is commonly summarized as "actions taken under the appearance of legal authority." Cornell Legal Information Institute, Wex, Color of Law. The controlling Sixth Circuit formulation is more exact: the official must possess state authority of the general type involved and purport to exercise that authority on the occasion in question. Mackey v. Rising, 106 F.4th 552, 559–61 (6th Cir. 2024). Section 1983 can cover an official who exercises delegated authority "whether [the official] act[s] in accordance with [that] authority or misuse[s] it." Id. at 560 (quoting Monroe v. Pape, 365 U.S. 167, 172 (1961)).

Accordingly, Spencer's theory is not internally inconsistent: Defendants acted under color of state law because they possessed governmental authority and purported to exercise that authority, but the particular challenged acts allegedly exceeded, misused, or fell outside lawful and immunity-protected authority.

The District Court's statement that the alleged acts did not fall outside "official duties" does not answer the under-color question adversely to Spencer. If anything, governmental duties and the purported exercise of court, prosecutorial, or clerical power support the state-action element. But "official" does not mean "lawful," and it does not mean "immune." The analysis has three distinct steps: (1) Did the defendant possess and purport to exercise governmental authority? (2) Did

the alleged conduct deprive Spencer of a federal right? (3) Does a function-specific immunity protect that particular conduct?

Calling Griffith a "judge" identifies the governmental position through which he allegedly acted; it does not concede that every challenged act was judicial, lawful, jurisdictionally valid, or immune.

Calling Archer a "prosecutor" identifies the governmental authority he allegedly invoked; it does not concede that every act involving property, pressure, retention, or off-record plea handling was advocative or absolutely immune.

Calling Reynolds a "clerk" identifies the governmental control she allegedly exercised over filings, docket entries, records, and access; it does not concede that every alleged failure was discretionary, performed at a judge's direction, integral to adjudication, or quasi-judicially immune.

The allegations therefore had to be tested function by function under the boundaries stated in the controlling immunity decisions. See Mireles, 502 U.S. at 11–12; Imbler v. Pachtman, 424 U.S. 409, 430–31 (1976). The labels "judge," "prosecutor," and "clerk," and the broad phrase "official duties," could not establish immunity at screening without determining whether each particular alleged act was judicial, advocative, discretionary, administrative, ministerial, or undertaken in the complete absence of jurisdiction. Because the order relied on the actors' general positions and official-looking papers instead of the particular

challenged functions, it did not complete the analysis required before immunity could support dismissal.

## VI. THE NOTWITHSTANDING-CLAUSE ARGUMENT IS ALREADY PRESERVED.

The principal brief already explains that the original Civil Rights Act of 1871 included language providing a federal remedy notwithstanding contrary state law, custom, or usage. Principal Br. ¶¶ 83–89. It also states that the District Court did not address the preserved argument. Id. ¶ 129.

The clarification needed here is limited. Spencer does not ask this Court to disregard controlling Supreme Court immunity decisions. He argues that § 1983's text, remedial purpose, and original notwithstanding language counsel against extending judge-made immunity beyond the functions and boundaries binding precedent actually protects. The clause reinforces the need for a narrow, functional analysis; it is not presented as a self-executing elimination of all immunity.

## CONCLUSION

The phrase "the record" referred to the state-court papers included with the Amended Complaint and thereby placed in the federal record. The order did not identify an official audio, video, stenographic record, transcript, or complete certified state-court record. Spencer submitted the official-looking papers to demonstrate their alleged defects, not to concede their authenticity, validity, legal sufficiency, or immunity-producing effect. Those papers did not contradict his

allegations that no proper, valid charging instrument was served, required proceedings and safeguards were absent, no valid plea occurred, conduct occurred off the record, and meaningful review was blocked. Any paper or signature attributed to Spencer remains alleged and contested, not conceded.

If this dismissal is allowed to stand without these claims ever being heard, the practical result would be to allow law-enforcement officers to take a person's property without a warrant, probable cause, or any other lawful basis, and then allow court officials to use that property as leverage to pressure Spencer into what the papers describe as a guilty plea to offenses he maintains he did not commit. The property included unique and irreplaceable religious items. Holding that property over Spencer prevented him from speaking and defending himself freely, while the failure to provide the necessary documents prevented him from challenging its continued retention or the alleged court proceedings themselves. Plaintiff also alleges that he was never served with a valid charging instrument telling him exactly what accusations he was required to answer. Every proceeding involving the felony charge was required to be recorded. Spencer also faced four aggravated-menacing counts carrying possible combined confinement far exceeding six months. Calling each count individually "petty" does not reduce the real-world seriousness of that threatened loss of liberty or eliminate the need for a reliable record. The aggravated-menacing proceedings had to be reliably preserved

under Appellate Rule 9(A)(2); under Criminal Rule 22, all petty-offense proceedings had to be recorded upon request. Yet Plaintiff has received no transcript, stenographic record, audio or video recording, or even a certified or otherwise authenticated copy of the alleged judgment. Without those materials, Spencer cannot establish what happened, what did not happen, or what was said, heard, waived, or never addressed. Plaintiff was therefore denied a meaningful opportunity to challenge the alleged plea and judgment, appeal what occurred, and obtain a fair hearing of his claims.

The fact that Defendants allegedly acted through governmental positions supports action under color of state law without conceding that every challenged function was lawful or immune. The Court should vacate the screening dismissal and remand for application of the proper pleading and function-specific immunity standards, or at minimum permit amendment and factual development on these issues.]

Respectfully submitted,


Jeremy Spencer
Plaintiff-Appellant,
c/o [1891 Grovepointe Dr.]
[Florence, KY 41042]
330-396-3566
Spencerj2121@yahoo.com

SPENCER V. ARCHER, No. 26-3462 — PROPOSED LIMITED SUPPLEMENTAL BRIEF

**CERTIFICATE OF COMPLIANCE**

This proposed limited supplemental brief uses a proportionally spaced 14-point Times New Roman typeface and contains 3,440 words, excluding the items exempted by Federal Rule of Appellate Procedure 32(f).

**CERTIFICATE OF SERVICE**

I certify that on August __5_, 2026, I served this filing and all attachments by the method permitted by Federal Rule of Appellate Procedure 25 on every party or counsel entitled to service. Before filing, complete the date, method of service, and the name and service address of each recipient below.

Method: _____e-mail_____

Griffith and Archer
100 E. Main Street
McArthur, OH 45651
assistantprosecutor@vintonco.com
viontoncountycourt@vintonco.com